UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WACHOVIA BANK, N.A.,<br>    Plaintiff,<br><br>       v.<br><br>JAMES CUMMINGS and<br>ALICE CUMMINGS,<br>    Defendants. | No. 3:09cv957 (SRU) |

## RULING ON MOTION FOR PREJUDGMENT REMEDY

Wachovia Bank, N.A. ("Wachovia") has filed a motion for a prejudgment remedy (**doc. # 5**) and a motion for disclosure of assets (**doc. # 6**) against the defendants, James and Alice Cummings.  The Cummingses have filed a motion for certification of questions to the Connecticut Supreme Court (**doc. # 19**).  For the reasons that follow, Wachovia's motions are **GRANTED** and the Cummingses' motion is **DENIED**.

**I.     Background**

Wachovia commenced this suit against James and Alice Cummings by filing a complaint (doc. # 1) dated June 18, 2009.  Wachovia served the Cummingses with the complaint, the motion for disclosure of property and assets, and the motion for a prejudgment remedy ("PJR") on June 25, 2009.  On August 12, 2009, the parties submitted a joint stipulation (Stipulation Regarding Plaintiff's Application for Prejudgment Remedy ("Stipulation"), doc. # 22) relating to those motions.  The parties have stipulated to the following facts.

Wachovia is a national banking association.  (*Id.* ¶ 3.)  Defendants James and Alice Cummings are married and reside in Greenwich, Connecticut.  (*Id.* ¶¶ 4, 6.)  123 East 61 LLC ("Aberdeen") is a New York limited liability company.  It is the owner of property located at 123 East 61st Street, New York, New York (the "Property").  The sole member of Aberdeen is

Aberdeen Townhomes LLC, a New York limited liability company.  Aberdeen Properties, Inc. and NV Aberdeen Management L.L.C. are two of the members of Aberdeen Townhomes LLC.  Mr. Cummings is the President of Aberdeen Properties, Inc., which is a New York corporation.  (*Id.* ¶ 5.)

On or about September 26, 2007, through its duly authorized representative, Aberdeen executed three promissory notes in favor of Wachovia (the "Notes") in the aggregate principal amount of $12,282,500.00.  The Notes were executed in connection with Aberdeen's acquisition and improvement of the Property.  (*Id.* ¶ 7.)  The three Notes and the original principal sums borrowed by Aberdeen under each note are: (i) Promissory Note (Acquisition Loan), $6,970,000.00 (the "Acquisition Loan Note"); (ii) Promissory Note (Building Loan), $3,646,500.00 (the "Building Loan Note"); and (iii) Promissory Note (Project Loan), $1,666,000.00 (the "Project Loan Note").  (*Id.* ¶ 8.)

Aberdeen also executed certain additional documents that relate to the indebtedness reflected by the Notes (collectively, with the Notes, the "Loan Documents").  True and accurate copies of the Loan Documents were submitted to the court with the Stipulation.  (*Id.* ¶ 9 & Ex. A-I.)  Those documents included an Acquisition Loan Mortgage, Assignment of Leases and Rents and Security Agreement; Building Loan Mortgage, Assignment of Leases and Rents and Security Agreement; and Project Loan Mortgage, Assignment of Leases and Rents and Security Agreement (collectively, "Mortgages"), which were duly recorded.  (*Id.* ¶ 10 & Ex. A-C.)  In or about June 2009, Wachovia had an appraisal of the Property performed, which appraised the Property in "as-is" condition at $13.9 million.  The parties submitted the appraisal to the court.  (*Id.* ¶ 11.)

On or about September 26, 2007, James and Alice Cummings and Wachovia entered into a Guaranty Agreement (the "Guaranty"). (*Id.* ¶¶ 12-13 & Ex. K.)  For the purpose of the Stipulation, the Cummingses do not contest that: monthly payments have not been made in accordance with the terms of the Notes since March 2009; $360,000.00 in liens have been filed against the Property and have not been released; and construction on the Property stopped for greater than fifteen days. (*Id.* ¶¶ 15-17.)  On May 20, 2009, Wachovia provided notice to Aberdeen, and to James and Alice Cummings, that Aberdeen was in default under the Loan Documents. (*Id.* ¶ 18.)

For the purposes of the Stipulation, Wachovia does not dispute that real property owned by the Cummingses, located in Greenwich, Connecticut, is encumbered by mortgages with an outstanding balance in the face amount of $4,779,609.56. (*Id.* ¶ 21.)  Wachovia seeks a PJR in the amount of $13,164,772.00.[1] (Application for Prejudgment Remedy, doc. # 5, Dec. of David R. McClellan ¶¶ 13-15.)

## II.  Discussion

The Cummingses object to the application of Connecticut's prejudgment remedy ("PJR") statute, Conn. Gen. Stat. § 52-278a *et seq.*, to them on two related grounds.  First, they claim the Guaranty Agreement contains a choice-of-law provision that precludes Wachovia from seeking relief under Connecticut's PJR statute.  Second, they claim that I should not grant the motion

---

[1] That amount includes: $11,707,702.28 in principal, accrued interest, and late fees due and owing on the three promissory notes as of June 15, 2009; $100,000.00, the estimated cost of enforcing the Guaranty, including attorneys' fees and other reasonable expenses, which are provided for under the Guaranty; and $1,357,069.72, representing approximately two years' worth of interest, which the parties agree is accruing at a rate of $1,859.74 per day, on the amount owed. (Stipulation ¶¶ 19-20 & Ex. K ¶ 8.1.3.)

because, in this diversity action, I am required to apply Connecticut choice-of-law rules, and a Connecticut court applying Connecticut choice-of-law rules would not utilize the Connecticut PJR statute in this case. Neither argument is persuasive. The Cummingses urge that, even if the Connecticut PJR statute applies, Wachovia is not entitled to the remedy it seeks. I disagree. Finally, the Cummingses argue I should certify the question to the Connecticut Supreme Court. I decline to do so.

### A. Certification

I begin with the question of certification because it is easily addressed. The Cummingses seek to certify the following issues:

> 1. Are Connecticut's prejudgment remedy statutes, Conn. Gen. Stat. § 52-278a et seq., construed as "substantive" for purposes of Connecticut's choice of law analysis in contractual disputes?
>
> 2. If so, would Connecticut apply New York law to an action brought in Connecticut where an application for prejudgment remedy has been filed seeking an attachment of real estate and the contract between the parties provides that the agreement "shall be governed by and construed in accordance with the substantive laws of the State of New York without reference to conflict of law principles"?

(Def. Motion for Certification of Questions to the Connecticut Supreme Court, doc. # 19, at 2.)

Under Connecticut law, "[t]he Supreme Court may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state." Conn. Gen. Stat. § 51-199b(d). When deciding whether to certify a question to the Connecticut Supreme Court, a court should consider, among other factors: "(1) the absence of authoritative state court decisions; (2) the importance of the issue to the state; and (3) the capacity of certification to resolve the litigation." *O'Mara v. Town of*

*Wappinger*, 485 F.3d 693, 698 (2d Cir. 2007).  "Where a question of statutory interpretation implicates the weighing of policy concerns, principles of comity and federalism strongly support certification."  *Parrot v. Guardian Life Ins. Co. of Am.*, 338 F.3d 140, 144 (2d Cir. 2003).

Connecticut appellate courts have not addressed directly the first question – whether Connecticut's PJR is substantive or procedural for choice-of-law purposes.  Several trial courts have addressed the issue through a discussion of the application of the PJR statute to a controversy governed by the substantive law of another state.  As I describe below,[2] those courts cited various appellate authority that led to their decisions in favor or against application of the statute and I conclude the same authority also guides my decision.  *See Macrolease Int'l v. Nemeth*, No. CV 990364471S, 2000 WL 804652 (Conn. Super. June 9, 2000) (applying prejudgment remedy law of foreign jurisdiction); *Butova v. Bielonko*, No. CV075010057, 2007 WL 4305534 (Conn. Super. Nov. 7, 2007) (applying Connecticut prejudgment remedy statute); *Pursuit Partners, LLC v. UBS AG*, No. X05CV084013452S, 2009 WL 3286011 (Conn. Super. Sept. 8, 2009) (applying Connecticut prejudgment remedy statute).

Regarding the remaining factors affecting certification, I conclude that certification of those questions would not resolve the litigation between the parties.  Although the first issue is arguably important to the state, resolving the issue in this particular litigation is of minimal importance to the state.

There is sufficient guidance from the Connecticut appellate courts for me to predict how the Connecticut Supreme Court would address the first issue.  Accordingly, I decline to certify that question.  Because I conclude the answer to the first proposed question is "no," I do not

---

[2]  See *infra*, Section II, C, "*Erie* Doctrine Challenge."

reach the second proposed question.

      B.      <u>Choice of Law In the Guaranty</u>

Connecticut follows the Restatement (Second) Conflict of Laws § 187, which states that "parties to a contract generally are allowed to select that law that will govern their contract," subject to certain exceptions. *See Elgar v. Elgar*, 238 Conn. 839, 850 (1996).

The Guaranty provides: "<u>Governing Law</u>.  This Guaranty shall be governed by and construed in accordance with the substantive laws of the state of New York without reference to conflict of laws principles."  (Stipulation, Ex. K ¶ 9.14 (emphasis in original).)[3]

The choice-of-law provision, Paragraph 9.14, specifies that New York substantive law applies, but does not require application of New York procedural law.  The issue is whether the court in which suit is filed must apply the prejudgment remedy statute of a foreign jurisdiction named by the parties to a contract.  The Cummingses urge me to adopt that position, which has been reached by two federal courts sitting in diversity. *See 9911 Properties v. Nat'l Property*

---

[3] In Paragraph 9.12, the Guaranty provides:

> Guarantor hereby consents that any action or proceeding against Guarantor be commenced and maintained in any court within the state of New York by service of process on Guarantor; and Guarantor agrees that the courts of such State shall have jurisdiction with respect to the subject matter hereof and the person of Guarantor and all collateral securing the obligations of Guarantor. Guarantor agrees not to assert any defense to any action or proceeding initiated by Bank based upon improper venue or inconvenient forum.

(Stipulation, Ex. K ¶ 9.12.)  The Cummingses have suggested that Paragraph 9.12 is a mandatory forum selection clause specifying that only New York has jurisdiction, but the plain language of the agreement indicates otherwise.  The paragraph does not require the parties to bring suit in New York; rather, it indicates the Defendants agreed in advance not to challenge jurisdiction or venue in New York if suit were filed there.  By no means does it make jurisdiction in New York mandatory under the Guaranty.

*Analysts, Inc.*, 1990 WL 187041, *1 (E.D. Pa. Nov. 27 1990); *S&G Press, Inc. v. Harris Graphics Corporation*, 718 F. Supp. 1459, 1460 (N.D. Cal. 1989).

I am not persuaded by either of the decisions cited by the defendants. First, neither decision engages in a thorough analysis of the issues presented here. Second, those decisions both assume that the parties' choice of substantive law also refleted a choice of what prejudgment attachment law would apply. There is nothing in the choice-of-law provision of the Guaranty to suggest that the parties chose New York's prejudgment remedy procedures. The Guaranty in this case does not require New York venue and does not require that New York procedural law apply. It does not bar me from hearing this case in Connecticut or from applying Connecticut's PJR statute.

C. Erie Doctrine Challenge

It is undisputed that, under the *Erie* doctrine, a federal court sitting in diversity applies federal procedural law and the substantive law of the forum state, including conflict-of-law rules. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 549 F.3d 137, 141-42 (2d Cir. 2008); *Patch v. Stanley Works (Stanley Chemical Co. Division)*, 448 F.2d 483, 487 (2d Cir. 1971). There is no federal procedural law that independently provides a prejudgment remedy. Rule 64 of the Federal Rules of Civil Procedure provides, however, that if the courts of the state where the federal court is located would provide a remedy of prejudgment attachment, it is also available in the federal court:

> At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies.

Fed. R. Civ. P. 64(a). The Rule provides a non-exhaustive list of available remedies, "however designated and regardless of whether state procedure requires an independent action;" that list includes attachment. Fed. R. Civ. P. 64(b). The Advisory Committee note from the Rule's 1937 adoption states that: "No rule concerning lis pendens is stated, for this would appear to be a matter of substantive law affecting State laws of property." By noting that Rule 64 seeks not to address lis pendens *because* it is substantive, the Advisory Committee note suggests that Rule 64 addresses *only* matters of procedural law. Thus, by negative implication, Rule 64 and its commentary suggest that a state's PJR statute is treated as procedural under federal law. This court has previously held that "Rule 64 thus authorizes a federal court to borrow relevant state law on provisional remedies." *Bahrain Telecomm. Co. v. Discoverytel, Inc.*, 476 F. Supp. 2d 176, 183 (D. Conn. 2007).[4]

Wachovia urges me to adopt a position that the "plain language" of Rule 64 instructs me to apply Connecticut's PJR without reference to Connecticut choice-of-law rules. *See Sprague*

---

[4] Indeed, without significant analysis, several federal district courts in Connecticut have applied the forum state's PJR statute. *See Bergesen v. Lindholdm*, 760 F. Supp. 976, 984 (D. Conn. 1991) (citing Fed. R. Civ. P. 64 and maritime law as making the Connecticut PJR statute applicable in action for breach of agreement governed under the laws of England); *Darrah-Wantz v. Brown*, 138 F.R.D. 20, 22 (D. Conn. 1991) (enforcing PJR and analyzing constitutionality but not applicability of Connecticut PJR to Connecticut resident); *Capuano v. Island Computer Products, Inc.*, 382 F. Supp. 2d 326, 337 (D. Conn. 2005) (adopting magistrate judge's recommended ruling, which applied Connecticut PJR statute, although without significant analysis of choice-of-law issue).

*See also* 11A Wright, Miller, and Kane, Federal Practice and Procedure § 2931 ("Rule 64, which has not been amended since it was adopted, authorizes the use of provisional remedies at the commencement of and during the course of an action. These remedies provide for seizure of a person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action. What these remedies are, and the circumstances under which they are available, is determined by the law of the state in which the district court is held . . . .") (2d ed. 1995) (footnote omitted).

*Energy Corp. v. Levco Tech. Inc.*, No. 3:09cv29, 2009 WL 1374593 (D. Conn. May 22, 2009). Wachovia argues that Local Civil Rule 4(c) provides additional support for its argument. Local Civil Rule 4(c) states that "a party may secure a pre-judgment remedy, as permitted by, and in accordance with, the law of the State of Connecticut." Conn. L. Civ. R. 4(c).

Neither Rule 64 nor Local Rule 4(c) answers the question whether a state remedy, such as attachment, is available in this Court. Both rules beg the question. The Rules direct the court to determine what remedies *are available* in the state court and to make them likewise available in federal court. A determination of what remedies are available in Connecticut requires the application of Connecticut choice-of-law principles.

The question is whether a Connecticut trial court hearing this case would apply Connecticut's own prejudgment remedy statute, or New York's. Wachovia argues that the PJR is a procedural law and that Connecticut would apply its own. The Cummingses argue the law is substantive in nature principally because it creates a remedy. For the reasons that follow, I conclude that a Connecticut court would apply its own prejudgment remedy statute under the facts of this case.

Connecticut General Statutes § 52-278a, *et seq.*, governs the availability of prejudgment remedies in Connecticut: "'Prejudgment remedy' means any remedy or combination of remedies that enables a person by way of attachment, foreign attachment, garnishment or replevin to deprive the defendant in a civil action of, or affect the use, possession or enjoyment by such defendant of, his property prior to final judgment but shall not include a temporary restraining order." Conn. Gen. Stat. § 52-278a(d).

The Cummingses urge me to adopt their argument that, under the Connecticut Supreme

-9-

Court's reasoning, the law is substantive. They first argue it "defines and regulates rights" and "abridge[s] or modif[ies] in fundamental ways the judicial rights of litigants." *See Weber v. U.S. Sterling Securities, Inc.*, 282 Conn. 722, 738-39 (2007). Second, the Cummingses argue that attachments are "extraordinary" judicial devices, which were unknown in the common law and are purely statutory. *See Farmers & Mechanics Sav. Bank v. Garofalo*, 219 Conn. 810, 814 (1991); *Beers v. Westport Bank and Trust Co.*, 50 Conn. App. 671, 674-75 (Conn. App. 1998). Third, they argue that the deprivation caused by a PJR is great, affects the property owner's rights, and can have constitutional implications. Fourth, they argue that a PJR is considered a final judgment with an expedited right of appeal. (Def. Brief in Opp., doc. # 17, at 10-14.) The Cummingses cite cases and secondary authority in support of each point. None of those characteristics, however, necessitates a conclusion that the Connecticut PJR is substantive for choice-of-law purposes.

      I conclude that, under Connecticut law, a PJR is a procedural mechanism. In Connecticut, "[p]rocedural statutes have been traditionally viewed as affecting remedies, not substantive rights, and therefore leave the preexisting scheme intact. . . . While there is no precise definition of either [substantive or procedural law], it is generally agreed that a substantive law creates, defines and regulates rights while a procedural law prescribes the methods of enforcing such rights or obtaining redress." *Weber*, 282 Conn. at 738-39. In *Weber*, the Court determined that a statute that abridged the plaintiff's right to bring a class action in New York state was substantive because it "affected an individual's cause of action." *Id.* at 739. In contrast, the Court in *Roberts v. Caton*, 224 Conn. 483 (1993), concluded that a statute extending the time period in which a plaintiff could bring suit, but which did not "also create the right of action," did

not "by itself alter a substantive right" and was procedural. *Id.* at 492.

As discussed above, Connecticut appellate courts have not addressed directly whether Connecticut's PJR statute is substantive or procedural. Several trial courts have discussed the application of the PJR statute to a controversy governed by the substantive law of another state, with varying outcomes. *See Macrolease Int'l v. Nemeth*, No. CV 990364471S, 2000 WL 804652 (Conn. Super. June 9, 2000) (applying prejudgment remedy law of foreign jurisdiction); *Butova v. Bielonko*, No. CV075010057, 2007 WL 4305534 (Conn. Super. Nov. 7, 2007) (applying Connecticut prejudgment remedy statute); *Pursuit Partners, LLC v. UBS AG*, No. X05CV084013452S, 2009 WL 3286011 (Conn. Super. Sept. 8, 2009) (applying Connecticut prejudgment remedy statute).

In *Macrolease*, the Superior Court decided that Connecticut's prejudgment remedy is substantive in nature. The Court relied on three cases: *Paine Webber Jackson & Curtis Inc. v. Winters*, 22 Conn. App. 640, *cert. denied*, 216 Conn. 820 (1990); *Roberts v. Caton*, 224 Conn. 483 (1993); and *City National Bank v. Davis*, 181 Conn. 42 (1980).

*Macrolease* cited *Paine-Webber*'s description of the "vexing question" courts face "of which rules are 'procedural' and which 'substantive.'" *Paine-Webber*, 22 Conn. App. at 650. It then cited *Roberts* for the proposition that "[i]f a statute gives a right of action that did not exist at common law . . . the entire statute is considered substantive rather than procedural." *Roberts*, 224 Conn. at 489. The *Macrolease* Court then noted that "a prejudgment remedy is a statutory scheme with no common law counterpart."[5]  2000 WL 804652, at *1. The Court determined that

---

[5] Although it is not determinative for this case, that conclusion is debatable. In *Ambroise v. William Raveis Real Estate, Inc.*, 226 Conn. 757 (1993), Justice Berdon, *dissenting*, cited Connecticut precedent indicating the "antecedent to the statutory attachment procedure, in

-11-

the statute "gives a litigant a new right, the right to bring an action at law to attach property to secure any potential judgment in the particular action at law. The Court cited *Davis's* description that "[a]n order granting or denying a prejudgment remedy is a final judgment." *Davis*, 181 Conn. at 45. The *Macrolease* court did not describe how *Davis* influenced its decision. Apparently on the basis that a PJR was wholly a statutory creation and gave rise to a "final judgment," the Court determined that it was a matter of substantive law under Connecticut jurisprudence. 2000 WL 804652, at *1. I do not find that analysis persuasive.

*Paine-Webber* not only identifies the "vexing question" faced by courts of "which rules are 'procedural' and which 'substantive,'" it also provides a method for distinguishing the two. The issue before me is "whether, in these circumstances" application of the statute in question "requires a substantive determination of the merits of the claim." *See Paine-Webber*, 22 Conn. App. at 651. The *Macrolease* Court failed to analyze that issue.

*Butova* relied on three decisions in concluding that Connecticut's PJR statute must be applied in a personal injury case where Massachusetts substantive law controlled. The Court relied on: *Rafferty v. Noto Bros. Construction, LLC*, 68 Conn. App. 685 (2002); *Hartford Accident & Indemnity Co. v. Ace American Reinsurance Co.*, 103 Conn. App. 319 (2007); and *Cahaly v. Benistar Prop. Exchange Trust Co.*, 268 Conn. 264 (2004).

The *Butova* Court cited *Rafferty* for its statement that the PJR statute was "adopted in response to a line of United States Supreme Court cases prescribing the standards of procedural due process in the area of property rights." 68 Conn. App. at 691. It cited *Hartford Accident &*

---

Connecticut, was the common law." *Id.* at 770, *citing and later quoting Barber v. Morgan*, 84 Conn. 618, 622 (1911) (citing *Bond v. Ward*, 7 Mass. 123, 128 (1810)).

*Indemnity* for its statement that application of the PJR statute is "a process afforded by a state statute enabling an individual to enlist the aid of the State to deprive another of his or her property by means of a prejudgment attachment or similar procedure." 103 Conn. App. at 334 (quotations and alterations omitted). And finally, the *Butova* Court cited generally to *Cahaly* to explain that a party must comply with requirements "to bring Connecticut assets into the custody of the law to be held as security for the satisfaction of a potential judgment." 268 Conn. at 264. *Butova* does not analyze those appellate cases, but rather relies completely on their descriptions of the PJR statute as procedural. Although not entirely persuasive, I find that analysis more compelling than the analysis and precedent cited in *Macrolease*. The *Butova* approach still does not answer the question posed in *Paine-Webber*: whether application of the statute requires a substantive determination of the merits of the claim. *See Paine-Webber*, 22 Conn. App. at 651.

The most recent Superior Court case in Connecticut to decide the issue, *Pursuit Partners*, 2009 WL 3286011, acknowledged *Macrolease* and *Butova*, and adopted the reasoning of the latter. *Pursuit Partners* additionally cites *Marlin Broadcasting, LLC v. Law Office of Kent Avery, LLC*, 101 Conn. App. 638, 646-47 (2007). That case engages the question posed in *Paine-Webber* and provides the dispositive analysis for the issue. *Marlin* states that "prejudgment remedy proceedings are not involved with the adjudication of the merits of the action brought by the plaintiff or with the progress or result of that adjudication." *Id.* at 646 (citation and internal quotation marks omitted). "The adjudication made by the court on [an] application for a prejudgment remedy is not part of the proceedings ultimately to decide the validity and merits of the plaintiff's cause of action. It is independent of and collateral thereto." *Id.* at 646-47 (internal quotation marks omitted). PJR proceedings "are only concerned with

whether and to what extent the plaintiff is entitled to have property of the defendant held in the custody of the law pending adjudication of the merits of that action. . . . This limited evidentiary proceeding contrasts sharply with, for example, the detailed and substantive arguments and conclusions that must be addressed in a motion to strike." *Id.* at 646 (citation and internal quotation marks omitted). Thus, as set forth by Connecticut appellate authority, application of the PJR statute does not require a determination on the merits and therefore does not constitute an issue of substantive law.

For the foregoing reasons, I conclude that a Connecticut court applying Connecticut choice-of-law rules would apply the Connecticut prejudgment remedy statute in this case. Accordingly, I will do so, too.

        D.        There is Probable Cause for the PJR

Pursuant to Connecticut General Statutes § 52-278d(a), the standard for issuing a prejudgment remedy is "whether or not there is probable cause to sustain the validity of the plaintiff's claim." *Three S. Dev. Co. v. Santore*, 193 Conn. 174, 175 (1984). "The legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." *Id.* (citations omitted). "Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false." *Id.* The statute provides that, at the hearing, the court "determine probable success by weighing probabilities." *Michael Papa Assocs. v. Julian*, 178 Conn. 446, 447 (1979).

To win the relief it seeks in this case, Wachovia must show it is more likely than not that it is entitled to demand and receive payment from the Cummingses under the terms of the

Guaranty.  The parties have stipulated that the loans are in default, and the quantities of money that are at issue.  Specifically, the parties have stipulated to the principal amount, accrued interest, and late fees due and owing on each Note as of June 15, 2009, as follows: Acquisition Loan Note, $7,091,394.77; Building Loan Note, $3,427,213.04; Project Loan Note, $1,189,094.47; for a total of $11,707,702.28.  (Stipulation ¶ 19.)  The parties also calculated the daily rate at which interest is accruing.  (*Id.* ¶ 20.)

The parties also agreed that: monthly payments have not been made in accordance with the terms of the Notes since March 2009; $360,000.00 in liens have been filed against the Property and have not been released; and construction on the Property stopped for greater than fifteen days.  (*Id.* ¶¶ 15-17.)  On May 20, 2009, Wachovia provided notice to Aberdeen, and to James and Alice Cummings, that Aberdeen was in default under the Loan Documents.  (*Id.* ¶ 18.)  I find there is probable cause that the delay in construction constitutes a default under the Building Loan Mortgage and the Project Loan Mortgage.  (*Id.*, Ex. B ¶ 7.3; Ex. C ¶ 7.3.)  Additionally, I find there is probable cause that the Mortgages are in default because liens have been filed against the Property (Stipulation ¶ 16; Ex. A ¶¶ 2.7, 7.9; Ex. B ¶¶ 2.7, 7.9; Ex. C ¶¶ 2.7, 7.9) and required monthly payments have not been made in accordance with the terms of the Notes (*id.* ¶ 15; Ex. A ¶ 7.1; Ex. B ¶ 7.1; Ex. C ¶ 7.1).  In both instances, I find probable cause that default triggers Wachovia's rights under the Guaranty to receive payment from the Cummingses.  (*Id.*, Ex. K ¶ 1.)

I find Wachovia has shown there is probable cause that Wachovia will prevail in its lawsuit in the amounts of damages described in the Stipulation.  Accordingly, a prejudgment attachment of the Cummingses' property shall enter, sufficient to secure a judgment of

$13,164,772.00.

### E. Adequate Security and Election of Remedies

Finally, the fact that the loan is already adequately secured does not make a PJR inappropriate in this case. Under Connecticut law, a plaintiff "may be *entitled* to a prejudgment remedy because it has demonstrated the requisite probable cause," but the court *may deny* the remedy if the plaintiff's "interest is already adequately secured." *Blakeslee Arpaia Chapman, Inc. v. EI Constructors, Inc.*, 32 Conn. App. 118, 131 (Conn. App. 1993) (emphasis added). The Cummingses argue that Wachovia should not be able to attach their real property in Connecticut because the amounts Wachovia seeks as a result of defaults under the loans are adequately secured by the Property in New York.

It is true that, on paper, the dollar value of the Property in New York is greater than the dollar value of the outstanding loans. The appraised value of the Property, however, does not reflect the transaction costs to Wachovia of obtaining legal title to the Property through foreclosure; nor the value the Property will actually realize upon sale; nor the fact that the Cummingses are not the sole owners of the Property and Wachovia is not the only entity with a secured interest in the Property. In contrast, the Cummingses are the sole owners of their real property, although it, too, provides security for the interests of other parties.

Moreover, the Guaranty "permits a cause of action separate and independent from the mortgages executed." *Bank of Boston Connecticut v. Schlesinger*, 220 Conn. 152, 157-58 (1991). Thus, Wachovia is "not required to proceed first" against the Property and the entity that executed the mortgages, "regardless of the value of that property as security for the notes." *Id.* The Guaranty provides:

> Bank . . . may proceed immediately against Guarantor without being required to bring any proceedings or take any action against Borrower, any other guarantor or any other person, entity or property prior thereto, the liability of Guarantor hereunder being joint and several, and independent of and separate from the liability of Borrower, any other guarantor or person, and the availability of other collateral security for the Notes and the other Loan Documents.

(Stipulation, Ex. K ¶ 1.) The parties could have required the lender "to exhaust the collateral securing the notes before pursuing its available remedy under the agreement," *see Schlesinger*, 220 Conn. at 159, but they did not.

Finally, the Cummingses urge me to award a prejudgment remedy in an amount less than the full amount sought. If a court finds there is not probable cause to believe a judgment in the full amount sought will be rendered in the plaintiff's favor, the court may award a prejudgment attachment in a smaller amount. *See Connecticut Light & Power Co. v. Gilmore*, 89 Conn. App. 164, 175-76 (2005). I find that Wachovia has shown probable cause that it will recover the full amount it seeks.

The Guaranty provides Wachovia with an election of remedies against the Guarantors individually, rather than requiring Wachovia first proceed against Aberdeen and the Property to recover the money it is owed. Thus, Wachovia can proceed directly against the Cummingses and may secure their personal property based upon the showing of probable cause.

F.   Motion for Disclosure of Assets

Generally, under Connecticut law, a disclosure of assets is ordered if a prejudgment remedy is ordered. *See* Conn. Gen. Stat. § 52-278n. Disclosure of assets is appropriate in light of the probable cause determination made in this case. The Cummingses shall, within twenty-one days of issuance of this ruling, disclose to Wachovia the existence, location and extent of any

property, as defined by Conn. Gen. Stat. § 52-278a(e), sufficient to satisfy a total judgment in the amount of $13,164,772.00.

### III.     Conclusion

For the reasons described above, the motion for a prejudgment remedy (**doc. # 5**) and motion for disclosure of assets (**doc. # 6**) are **GRANTED**.  Wachovia shall post a bond in the amount of $10,000.  Conn. Gen. Stat. § 52-278d.  The motion for certification of questions to the Connecticut Supreme Court (**doc. # 19**) is **DENIED**.

It is so ordered.

Dated at Bridgeport, Connecticut, this 8th day of February 2010.

                                /s/ Stefan R. Underhill
                                  Stefan R. Underhill
                                  United States District Judge